UNITED STATES of America and The State of Washington, Plaintiffs,

v.

The WESTERN PROCESSING COMPANY, INC., et al.; The Boeing Company, et al., Defendants.

The BOEING COMPANY, Third–Party Plaintiff,

v.

A & A ANDERSON TANK SERVICE, LTD., et al., Third–Party and Cross–Claim Defendants.

AMERICAN TAR COMPANY, et al., Third–Party Plaintiffs,

v.

A & A ANDERSON TANK SERVICE, LTD., et al., Third–Party and Cross–Claim Defendants.

Jack and Leah PINCHEV, Third–Party Defendants and Third–Party Plaintiffs,

v.

UNITED STATES of America, and State of Washington, Third–Party Defendants.

Nos. C89–214M, C83–252M and C89–224M.

United States District Court, W.D. Washington, at Seattle.

Jan. 10, 1991.

William A. Gould, Perkins & Coie, Seattle, Wash., for Boeing Co.

Marcus B. Nash, Stafford, Frey, Cooper & Stewart, Seattle, Wash., for NW Steel Rolling Mills, Inc. and NW Steel Rolling Mills Liquidating Trust.

Frederick O. Frederickson, Michael J. Swofford, Graham & Dunn, Seattle, Wash., for Security Pacific Bancorporation Northwest.

Ronald A. Franz, Carney, Stephenson, Badley, Smith & Spellman, Seattle, Wash., for Liquid Waste Disposal Co.

Garmt J. Nieuwenhuis, Issaquah, Wash., pro se.

Glen Andrew Anderson, Atty. Gen.'s Office, Torts, J. Tanya Barnett, Laurie Sillers–Halvorson, Atty. Gen.'s Office, Ecology Div., Olympia, Wash., Jon Peter Ferguson, Atty. Gen.'s Office, Tort Claims Div., Seattle, Wash., for Washington State.

Susan L. Barnes, U.S. Atty.'s Office, Seattle, Wash., David W. Zugschwerdt, U.S. Dept. of Justice, Environment and Natural Resources Div., Washington, D.C., for U.S.

Peter H. Haller, Ater, Wynne, Hewitt, Dodson & Skerritt, Seattle, Wash., for Atlantic Richfield Co., Bethlehem Steel Corp., Chevron U.S.A., Inc., Flecto Coatings Ltd., John Fluke Mfg. Co., Heath Techna Aerospace Co., Morton Thiokol Inc., Pacific Propellor Inc., Safety Kleen Inc., Seattle Times Inc., Pittsburgh & Midway Coal Mining Co., Western Pneumatic Tube Co. and Nortar Inc.

Jeffrey B. Wihtol, Lindsay, Hart, Neil & Weigler, Portland, Or., Peter H. Haller, Ater, Wynne, Hewitt, Dodson & Skerritt, Seattle, Wash., for American Tar Co.

Larry Bruce Alexander, Seattle, Wash., for Widing Transp. Inc.

John R. Allison, Betts, Patterson & Mines, Seattle, Wash., for Crosby & Overton Inc.

Lisa M. Stone, Stoel, Rives, Boley, Jones & Grey, Seattle, Wash., Kevin Q. Davis, Stephen S. Walters, Stoel, Rives, Boley, Jones & Grey and Richard D. Bach, Portland, Or., for Precision Castparts Corp., Intern. Controls Corp. and Radiation Intern.

Marc A. Bateman, Richard M. Barney, Barney & McAdams, Seattle, Wash., for Ace Galvanizing Co. and Pontius Trucking.

Richard John Watkins, Seattle, Wash., for Ryan & Haworth Co.

James Morton Beecher, Hackett, Beecher & Hart, Seattle, Wash., for RSR Corp.

Robert Farnum Bakemeier, Jeffrey Wayne Leppo, Jeanette DiScala McGraw, Bogle & Gates, Seattle, Wash., for Lockheed Shipbuilding & Const. Co., Davis Walker Corp. and McMillan Bloedel.

Clark J. Davis, Davies Pearson P.C., Tacoma, Wash., for Bayside Waste Hauling & Transp. Co.

Robert Jerome Grenier, Seattle, Wash., for Amalgamated Services Inc.

Victoria Jensen Bjorkman, Lawrence E. Hard, LeSourd & Patten, P.S., Seattle, Wash., for Union Oil Co. of Cal., GATX Tank Storage Terminal Corp., Northwest Tank Service and Canadian Forest.

Jerry H. Kindinger, Sharon J. Bitcon, Ryan, Swanson & Cleveland, Seattle, Wash., for Lee & Eastes, Tank Lines, Inc., Inland Transp. Co., Inc., Pay 'N Save Corp. and South Center Oil Inc.

John P. Lycette, Jr., Seattle, Wash., for Nat. Transfer Inc.

James Morton Beecher, Hackett, Beecher & Hart, Richard Lee Sessions, Seattle, Wash., for Scott Galvanizing Co., Inc.

Benjamin Gould Porter, George, Hull & Porter, Seattle, Wash., for Color Tech Inc. and Asko Processing Inc.

Joel Sherwood Summer, Univar Corp., Legal Dept., Seattle, Wash., for Univar Corp. and Pacific Resins & Chemicals Inc.

Scott A. Smith, Short, Cressman & Burgess, Seattle, Wash., for Tree Island Steel Co. Ltd.

Terence K. McGee, Thomas Anderson Sherwood, McGee & Reno, Seattle, Wash., for Continental Can Co.

Robert J. Downey, Law Offices of John Lockie, Seattle, Wash., for Norfin Inc.

Norfin Inc., Donald L. Sneelman, c/o Herb Lakefish NF Corp., Seattle, Wash., pro se.

C. Stan Webert, Seattle, Wash., for Coastal Tank Cleaning Services Inc.

William D. Maer, Heller, Ehrman, White & McAuliffe, Seattle, Wash., for Anchor Post Products, Canron Inc. and Westak–North.

Shane Cornelius Carew, Ronald A. Franz, Carney, Stephenson, Badley, Smith & Spellman, Seattle, Wash., for Quigg Bros–McDonald Inc., Jack Pinchev and Leah Pinchev.

Preston Niemi, Seattle, Wash., for A J Zinda Co.

Jeffrey Lynn Carey, Seattle, Wash., for Pozzi Bros. and Lumber Trucking Service.

James T. Johnson, Seattle, Wash., for Tacoma Hauling Inc., Tacoma Hauling/Gunter Bros. and Tacoma Hauling/Jack Creager Trucking.

Gary Michael Abolofia, Bellevue, Wash., for Culligan Water Service.

David Utevsky, Cynthia R. First, Foster Pepper & Shefelman, Seattle, Wash., for Hearst Corp.

## ORDER GRANTING IN PART AND DENYING IN PART TRANSPORTER DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

McGOVERN, District Judge.

Transporter Defendants (Third-party defendants, Bayside Waste Hauling and Transfer, Inc.; Crosby & Overton, Inc.; National Transfer, Inc.; Pontius Trucking; and Widing Transportation, Inc.) move pursuant to Fed.R.Civ.P. 54(b) and 56 for dismissal of all claims against them based upon the Comprehensive Environmental Response, Compensation, and Liability Act (CERCLA), 42 U.S.C. § 9601 or Washington's Model Toxics Control Act (MTCA), RCW Ch. 70.105D.

The Transporter Defendants transported various wastes generated by others to the Western Processing site.

The Transporter Defendants argue, however, that they are not subject to liability under CERCLA or MTCA unless they selected the Western Processing site as the destination for the waste. Summary judgment should, therefore, be granted to all transporter defendants as to claims based

on waste for which they did not select the Western Processing site.

Additionally, Transporter Defendants argue that under MTCA, regardless of who selected the site, there is no liability when the facility could legally receive the substances at the time of delivery.

Finally, Transporter Defendants argue that as to the four defendants who are common carriers, National Transfer, Pontius Trucking, Widing, and Bayside, rules imposing strict liability do not apply where the activity engaged in is required of the common carrier by virtue of its status as such.

Third–Party Plaintiffs The Boeing Company and American Tar Company, *et al.* (hereafter Boeing) oppose the motion in most of its aspects, but do concede others.

**A. CERCLA Liability**

**1. CERCLA § 107(a)(4)**
**Transporter Liability**

■ CERCLA Section 107(a)(4) (42 U.S.C. § 9607(a)(4)) imposes liability on

any person who accepts or accepted any hazardous substances for transport to disposal or treatment facilities, incineration vessels or sites selected by such person, from which there is a release, or threatened release which causes the incurrence of response costs, of a hazardous substance....

Transporter Defendants argue that this language imposes liability against them only if they selected Western Processing as the disposal site. Boeing argues that the Transporters are misreading this section.

Transporters cite *United States v. New Castle County,* 727 F.Supp. 854 (D.Del. 1989) and other U.S. District Court cases for this proposition. In *New Castle,* however, the Court could not determine the issue of transporter liability on summary judgment as there were material issues of fact; there was insufficient evidence upon which to make basic findings, and the State did not even address the issue. Transporters also cite *Jersey City Redevelopment Authority v. PPG Industries, Inc.,* 18 Envtl.L.Rep. 20364, 1987 WL 54410 (D.N.J.

1987), but their reliance on this case is misplaced. *Jersey City* concerned waste dumped on a street in a residential development. The Court interpreted Section 107(a)(4) as follows:

This section holds liable a transporter of hazardous waste only if that waste is transported to one of three specified destinations: (1) a disposal facility; (2) a treatment facility; (3) a site selected by the transporter.

*Id.* at 20366. The site of the dumping, Ninth Street in the residential development, fell into none of the categories: it was neither a disposal facility, nor a treatment facility, and while it may have been a "site," it was not selected by the transporter defendant, it was selected by the plaintiff. (The *Jersey City* Court was applying an earlier version of the statute before it was amended to include "incineration vessels.")

While *Jersey City* may not conflict with the Transporter's viewpoint, it does not buttress it in the case at bar, since the decision presents no analysis concerning the site selection issue as the facts in the case did not necessitate it.

The *Jersey City* Court's interpretation of Section 107(a)(4) may be defensible from a grammatical point of view—that a modifier's reference is to the closest noun or verb; nevertheless, where there is a series of referents, the matter is somewhat ambiguous, and *Jersey City* did not elucidate the issue.

The ambiguity of Section 107(a)(4) is resolved by reference to comments by Senators who played a role in drafting CERCLA, the view of the U.S. EPA, and by consideration of the Section in view of the CERCLA statutory scheme.

Senators Chafee and Randolph explained that as to lawsuits against transporters, selection of the disposal destination by the transporter was necessary before liability could be imposed upon him. *See* R.M. Eddy & D.T. Riendl *Transporter Liability Under CERCLA,* 16 Envtl.L.Rep. 10244, 10251–52 (Sept.1986). This comment was made in the context of the Senators introducing an amendment to the Resource Con-

servation and Recovery Act (RCRA) to limit possible citizen lawsuits against transporters and thus bring RCRA into accord with CERCLA, which, they stated requires site selection by the transporter. *Id.;* 130 Cong.Rec. S9177 (daily ed. July 25, 1984).

The U.S. EPA takes the same view as the Senators. As a matter of EPA policy, transporters will not be sent notice letters nor have enforcement actions brought against them as potentially responsible parties until it has been determined that the transporter selected the disposal or treatment facility or other site. *See,* 16 Envtl.L. Rep. at 10252 and n. 66.

The treatise, D. Stever, Vol. 1, *Law of Chemical Regulation and Hazardous Waste* 1989 is in accord with the above viewpoints:

Transporter liability [under § 107(a)(4)] is limited to transporters who were given discretion to select the disposal or treatment site by the generator.

*Id.,* § 6.07[2][f][iii], at 6–143 (Release # 6, 12/89).

To restrict transporter liability to those situations where transporters have selected the site for delivery of hazardous waste is equitable. "Site" in this context is used as a broad term that includes "facilities" for disposal and treatment of hazardous substances and incineration vessels. Also, the definition section of CERCLA, 42 U.S.C. § 9601(9), broadly defines "facility" to include a "site" or "area." Thus, the terms are virtually interchangeable.

The terms being interchangeable, there can be little sense in holding the transporter liable for deliveries made to facilities designated by others, but holding him liable for deliveries to "sites" only if the transporter chose the site. An interpretation that this Section meant to hold transporters liable regardless of who selected the site conflicts with the Senators' view referenced above.

Moreover, transporters have a limited role in the activity surrounding hazardous substances. They neither create nor treat the material, but are responsible for its safe carriage between the point where it is generated and where it is left for disposal or treatment. If the transporter does not select the delivery site, the transporter's connection with the material is the most attenuated among potentially responsible parties. If the transporter does select the delivery site, the transporter's role becomes a less passive one. As one who actively selected a disposal site, the transporter may more equitably be subject to liability.

This analysis harmonizes with Section 107(a)(3) concerning "generator" liability where the site selection language is not present. A generator of hazardous substances may be liable for somehow arranging the disposal or treatment of the substances, or by arranging with a transporter for taking care of the material. Thus, whether a generator selected the site or not, the generator will be liable, and site selection language is unnecessary. *Accord,* Sever, *id.* at 6–143. This is appropriate owing to the generator's role in creating the hazardous material in the first place. The transporter, on the other hand, has had no role in the creation or treatment of the material. When the transporter finally does become involved with hazardous material, there will be two alternatives: either the transporter is directed where to take the material, or the choice is left to the transporter. In the latter case, the more active role generates potential liability.

Accordingly, the motion of Transporter Defendants for partial summary judgment as to those deliveries for which they did not select the site is GRANTED.

### 2. CERCLA § 107(a)(3) Generator Liability

■ Boeing makes an additional argument that the Transporter Defendants may be liable under another CERCLA section regardless of who selected the facility. Under Section 107(a)(3) (42 U.S.C. § 9607(a)(3)), liability may be imposed on

any person who by contract, agreement, or otherwise arranged for disposal or treatment, or arranged with a transporter for transport for disposal or treatment, of hazardous substances owned or

possessed by such person, by any other party or entity, at any facility or incineration vessel owned or operated by another party or entity and containing such hazardous substances....

Boeing argues that the Transporter Defendants (1) are "persons" (corporations are persons under CERCLA Section 101(21)) (2) who possessed hazardous wastes (by transporting the substances in their trucks) (3) and arranged with other entities (with waste generators or Western Processing to pick up wastes, and with Western Processing to dispose of wastes) (4) for treatment of hazardous wastes (5) at a disposal or treatment facility (Western Processing) (6) owned or operated by another and (7) containing hazardous substances.

Boeing's argument is without merit. There is no case authority for Boeing's interpretation. The case it cites holds that the section applies to generators of waste and those who "arrange" for disposal. Certainly the statute does so apply, but it requires labored parsing to conclude that this section addresses transporter liability, particularly in view of Section 107(a)(4) that clearly provides for transporter liability. It makes more sense to read the two CERCLA sections as addressing separately the liability of (1) generators (and "arrangers") and (2) transporters.

Boeing makes the additional argument that 42 U.S.C. § 9601(20)(B), implies transporter liability under Section 107(a)(3) (42 U.S.C. § 9607(a)(3)). Section 9601(20)(B) provides:

In the case of a hazardous substance which has been accepted for transportation by a common or contract carrier and except as provided in section 107(a)(3) or (4) of this Act [42 U.S.C.S. § 9607(a)(3) or (4) ], (i) the term "owner or operator" shall mean such common carrier or other bona fide for hire carrier acting as an independent contractor during such transportation, (ii) the shipper of such hazardous substance shall not be considered to have caused or contributed to any release during such transportation which resulted solely from circumstances or conditions beyond his control.

Boeing argues that Section 107(a)(3) would not have been referenced if that section did not apply to transporters in the first place.

Subsection (20)(B) concerns releases of hazardous substances that occur during transport. *Accord*, R.M. Eddy & D.T. Riendl, *Transporter Liability Under CERCLA*, 16 Envt'l L.Rep. 10244, 10250 (1986). The reference to Section 107(a)(3) logically refers to those other situations where the "shipper"—the generator—will be a liable party.

Section 107(a)(3) [42 U.S.C. § 9607(a)(3) ] is not a CERCLA provision under which transporters may be liable.

3. Effect of Common Carrier Status

■ Four Transporter Defendants—National Transfer, Pontius Trucking, Widing, and Bayside—are common carriers licensed and regulated by the Interstate Commerce Commission and the Washington State Utilities and Transportation Commission. As such, they argue a separate and additional basis for this motion.

They argue that as common carriers, they must accept, carry, and deliver all goods offered to them for transport within the scope of the operating authority set forth in their permits. They cannot discriminate against customers nor refuse to accept commodities that may be dangerous for transport. Thus, courts have recognized a "public duty" exception to absolute or strict liability arising from the carriage of hazardous substances. While this argument may have been or could have been part of the rationale for requiring that a transporter select the site for delivering hazardous materials before liability may attach, this argument as a complete defense to liability is not well taken.

CERCLA's liability provision begins at Section 107(a):

Notwithstanding any other provision or rule of law, and subject only to the defenses set forth in subsection (b) of this section....

This Court has considered the availability of other defenses under this section and has concluded that this section precludes unenumerated defenses. *See United*

*States v. Western Processing Co.*, 734 F.Supp. 930, 939 (W.D.Wash.1990) (The better reasoned decisions and the majority of cases have held that the limited defenses of Section 107(b) are exclusive.) Therefore, since there are only three defenses under Section 107(b)—an act of God, and act of war, or an act or omission of a third party—and since the common carrier defense falls under none of these enumerated defenses, the Transporter Defendants may not raise it.

**B. MTCA Liability**

■ Washington's Model Toxics Control Act (MTCA), RCW Ch. 70.105D, defines transporters who are subject to liability as follows:

> Any person (i) who accepts or accepted any hazardous substance for transport to a disposal, treatment, or other facility selected by such person from which there is a release or a threatened release for which remedial action is required, unless such facility, at the time of disposal or treatment, could legally receive such substance; or (ii) who accepts a hazardous substance for transport to such a facility and has reasonable grounds to believe that such facility is not operated in accordance with chapter 70.105 RCW; ....

RCW 70.105D.040(1)(d).

The Transporter Defendants argue, and Boeing agrees, that site selection by the transporter is an express prerequisite to liability under MTCA. Transporter Defendants also argue, and Boeing does not contest, that there are no allegations under clause (ii) and that provision is intended to apply prospectively only.

Boeing does argue that as to Transporter Defendants Crosby & Overton and Widing, there is a genuine issue of material fact over both site selection and whether Western Processing could legally receive the "extremely hazardous wastes" delivered by Crosby & Overton and Widing, at least as of and after 1978.

### 1. Crosby & Overton, Inc.

Boeing has cited numerous statements that contradict the affidavit of Robert Dent submitted on behalf of Crosby & Overton.

[See pp. 18—25 of Boeing memo and materials attached to Schneider Affidavit.] Viewing the evidence in the light most favorable to the nonmoving party, Boeing, the evidence creates a genuine issue of material fact as to whether Crosby & Overton selected the Western Processing site for the following waste identified by Boeing:

(1) Chevron waste—two shipments;

(2) Van Port Industries waste—eight deliveries, 1975—78;

(3) Tacoma Boatbuilding waste, three shipments;

(4) Pacific Sound Industrial waste;

(5) Pre–1978 waste—three shipments;

(6) Rhone–Poulenc waste—17,800 gallons.

(7) For those shipments for which Crosby & Overton fails to identify a generator, there is also a genuine issue of material fact: Mr. Dent states, without explanation, that the nature of the waste indicates that it was the customer who selected Western Processing as the disposal facility. Also, the shipments for which no generator is identified occurred prior to Mr. Dent's joining Crosby & Overton in 1978, calling his personal knowledge into question. Summary judgment is denied as to these shipments.

### 2. Widing Transportation, Inc.

Widing moves for summary judgment with respect to all deliveries itemized in the Affidavit of Tracy Faust, but does not seek judgment with respect to the deliveries of 493,438 gallons of rinse water apparently generated and delivered by Widing to Western Processing. Boeing contends that Widing may have selected Western Processing for at least one of its shipments for which it seeks dismissal: a 1977 shipment by Widing of chromic acid from Asko Processing, Inc. to Western Processing. In a June 17, 1983 letter from Asko President David Kelly to the U.S. EPA (Exhibit J, Schneider Affidavit), Kelly states that "no arrangements were made by Asko Processing, Inc. for delivery of substances to that site [Western Processing]." Also, Kelly testified in his deposition that he did not

initially know that Asko wastes were being taken to Western Processing, but learned of it at some point. (Kelly Dep. Tr. at 19—21, attached as Exhibit K to Schneider Affidavit.) Thus, there is the inference that Widing may have suggested or selected Western Processing as the disposal facility for Asko's materials.

This evidence creates a genuine issue of material fact. Moreover, Kelly identified other Asko employees who may have knowledge on this subject who have not yet been deposed. Summary judgment is denied as to this Widing shipment of Asko waste.

### 3. Legality of Site

Boeing contends that Western Processing could not legally receive the substances delivered by Crosby & Overton and Widing, at least as of and after 1978. Under RCW 70.105.050 (1976), the disposal of "extremely hazardous wastes" was prohibited at other than sites approved under RCW Ch. 70.105 (not Western Processing), unless the wastes were treated to remove their hazardous properties. In 1978 regulations defined the characteristics of "extremely hazardous waste," and later chromic acid (handled by Crosby & Overton and Widing) was specifically designated as such along with other chemicals. *See* Chapter 173–303–9903 WAC.

One delivery of chromic acid is listed in Exhibit B to Robert Dent's affidavit, on behalf of Crosby & Overton. That delivery occurred April 4, 1975, before the regulation. There is one delivery listed in Exhibit A to Tracy Faust's affidavit on behalf of Widing. That delivery occurred January 15, 1977, apparently within the effective date of the RCW provision. Widing, however, presents the list of deliveries to Western Processing stating that the generator selected the site. There being no evidence to the contrary as to the chromic acid, the issue as to whether Western Processing could accept the material is irrelevant as Widing did not select the site.

### C. RULE 54(b) JUDGMENT

Boeing argues that final judgment under Fed.R.Civ.P. 54(b) is inappropriate because "the dismissed claims are closely related to pending claims."

Transporters point out, however, that two Transporter Defendants would be dismissed completely: Pontius and National Transfer, while the other three defendants would remain, having only a portion of the claims against them dismissed.

Rule 54(b) judgment is appropriate only as to Pontius Trucking and National Transfer, Inc. Such a judgment would be confusing as to defendants who still remain in the case.

### CONCLUSION

NOW, THEREFORE, the Court concludes as follows:

1. Partial Summary Judgment of dismissal is granted as to those deliveries made by Transporter Defendants for which they did not select the site pursuant to CERCLA Section 107(a)(4) (42 U.S.C. § 9607(a)(4)) and Washington's Model Toxics Control Act (MTCA), RCW Ch. 70.105D. (See parts A.1. and B.)

2. Partial Summary Judgment of dismissal is denied as to those deliveries by Crosby & Overton, Inc. and Widing Transportation, Inc. for which Boeing demonstrated a genuine issue of material fact as discussed in part B.1. and 2. above.

3. There being no just reason for delay, the Clerk is directed to enter judgment for Pontius Trucking and National Transfer, Inc. pursuant to Fed.R.Civ.P. 54(b).

SO ORDERED.