

1994 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

9-12-1994

# Tippins, Inc. v. USX Corp.

Precedential or Non-Precedential:

Docket 93-3587

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1994

Recommended Citation

"Tippins, Inc. v. USX Corp." (1994). *1994 Decisions.* Paper 131.
http://digitalcommons.law.villanova.edu/thirdcircuit_1994/131

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 1994 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

NOS. 93-3587, 93-3599, 93-3609
_____

TIPPINS INCORPORATED, a Pennsylvania corporation; and
INTERNATIONAL MILL CONSTRUCTION, INC.,
a Pennsylvania Corporation

v.

USX CORPORATION; a Pennsylvania corporation and
PETROCLEAN INC., a Pennsylvania corporation

                    USX CORPORATION,
                        Appellant in No. 93-3587

                    PETROCLEAN, INC.,
                        Appellant in No. 93-3599

                    TIPPINS INCORPORATED and
                    INTERNATIONAL MILL CONSTRUCTION,
                    INC.,
                        Appellants in No. 93-3609

_____

On Appeal From the United States District Court
For the Western District of Pennsylvania
(D.C. Civ. No. 92-cv-01799)

_____

Argued: June 22, 1994

Before: BECKER and HUTCHINSON, <u>Circuit Judges</u>, and
JOYNER, <u>District Judge</u>.[*]

(Filed:  September 12, 1994)


          DAVID L. SMIGA, ESQUIRE (ARGUED)
          USX Corporation

_____

     *.     The Honorable J. Curtis Joyner, United States District
Judge for the Eastern District of Pennsylvania, sitting by
designation.

600 Grant Street, Room 1538
Pittsburgh, PA  15219-4776
       <u>Attorney for Appellant/Cross-</u>
       <u>Appellee USX Corporation</u>

CAROLYN M. BRANTHOOVER, ESQUIRE (ARGUED)
SCOTT E. WESTWOOD, ESQUIRE
Kirkpatrick & Lockhart
1500 Oliver Building
Pittsburgh, PA  15222
          Attorneys for Appellees/Cross-
          Appellants Tippins Incorporated

          International Mill Construction,

and

Inc.


ROBERT S. ADAMS, ESQUIRE (ARGUED)
Wittlin, Goldston, Caputo & Pollock
213 Smithfield Street
200 Pitt Building
Pittsburgh, PA  15222-2224
          Attorney for Appellees/Cross-
          Appellants Petroclean, Inc.

---

**OPINION OF THE COURT**

---

BECKER, Circuit Judge.

These appeals from two orders of the district court in a contribution action involving the allocation of response costs under the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"), 42 U.S.C.A. §§ 9601-75 (1983 & Supp. 1994), present an interesting question of first impression in the courts of appeals concerning transporter liability under CERCLA § 107(a)(4), 42 U.S.C.A. § 9607(a)(4).  The first order granted summary judgment in favor of the plaintiffs/cross-appellants, Tippins Inc. and International Mill Construction, Inc. ("IMC"),[1] and

---

[1].     IMC is a wholly-owned subsidiary of Tippins Inc.  References to Tippins in this opinion include IMC.

held the defendants/appellants, USX Corporation and Petroclean Inc., liable for CERCLA response costs arising from the remedial action instituted by the United States Environmental Protection Agency ("EPA") and the Indiana Department of Environmental Management at the Four County Landfill ("Four County") in Rochester, Indiana. The court found USX liable as an arranger and Petroclean liable as a transporter. The second order allocated among Tippins, Petroclean, and USX all past and future response costs.

Appellants raise a number of issues. We write solely on Tippins' argument that a transporter is liable even if it does not select the facility at which the waste was disposed, and on Petroclean's argument that it cannot be held liable as a transporter unless the court finds that it made the ultimate decision to select Four County as the disposal facility. We find no error in the district court's treatment of any of the other issues (described _infra_ at pp. 6-8), and as they are straightforward they will be affirmed without discussion.

We reject Tippins' argument that under section 107(a)(4) a transporter is liable as a responsible party even if it does not "select" the disposal "facility" (in contrast to a "site"). We also reject Petroclean's assertion that it cannot be liable unless the court finds that it made the ultimate selection of the facility as the disposal location regardless of whether it contributed to the selection of the facility ultimately utilized. We basically agree with Tippins that § 107(a)(4) applies if the transporter's advice was a substantial contributing factor in the decision to dispose of

the hazardous waste at a particular facility.  As we interpret that section, a transporter selects the disposal facility when it actively and substantially participates in the decision-making process which ultimately identifies a facility for disposal.  Since there is no dispute that Petroclean did so -- Petroclean had considerable input into the selection process and, importantly, Tippins relied upon Petroclean's expertise in hazardous waste management when making its disposal decision -- Petroclean is liable as a transporter.  Accordingly, we will also affirm the grant of summary judgment against Petroclean on transporter liability.

## I. FACTS AND PROCEDURAL HISTORY

In September 1987, Tippins signed an agreement with Sydney Steel Corporation of Nova Scotia to provide equipment for electric arc furnace ("EAF") steelmaking.  Included in this agreement was a provision that required Tippins to furnish and install an EAF baghouse.[2]  Tippins thereupon contacted a representative of U.S. Realty Development, a division of USX, and inquired about the availability of a baghouse.  In October 1987, a purchase agreement was executed whereby USX agreed to sell, and Tippins agreed to purchase, a used EAF baghouse which was located at the USX Duquesne Works for $300,000.  Under the purchase agreement, Tippins was responsible for the dismantling and load-out of the baghouse.

---

[2].    EAF dust is a byproduct of the manufacture of steel using electric furnaces.  A baghouse, a large, fabricated structure, vaccuums contaminated air inside to filter out the EAF dust.  The dust is collected inside a hopper or dumpster, and clean air is exhausted from the structure.  The EPA listed EAF dust as a hazard-

As a result of USX's manufacturing and processing of steel at the Duquesne Works, EAF dust was present in and around the baghouse. To effect cleanup of the EAF dust, Tippins solicited bids from contractors to pick up and transport the dust for disposal. Tippins eventually contracted with Petroclean, which is licensed to haul hazardous waste and specializes in the transport and disposal of hazardous substances, to transport the dust for disposal. The transportation agreement provided that Petroclean would supply the labor, equipment, and material for removal and transport of the EAF dust as well as obtain a provisional EPA identification number for the generation of the hazardous waste.

The CECOS International facility in Williamsburg, Ohio was chosen after Petroclean gathered information on the site and submitted a proposal to Tippins based on certain cost parameters. Those cost parameters involved the use of a certain type of container for the dust known as a bulk lift disposal bag. The parties subsequently learned that the CECOS site would accept EAF dust only if packaged in its own containers. Since those containers were "prohibitively" expensive, Tippins and Petroclean agreed to transport the dust to another disposal site. Petroclean, having surveyed substitute disposal sites, identified two landfills that would accept the dust, the Four County Landfill in Rochester, Indiana and Wayne Disposal, Inc. in Detroit, Michigan. Petroclean contacted each site, gathered financial information as to disposal

(..continued)
ous substance in 1980, designating it as K061. <u>See</u> 40 C.F.R. § 261.32.

costs, and offered Tippins both sites as possible disposal locations from which Tippins could choose. Tippins subsequently picked Four County, where Petroclean disposed of the EAF dust.[3]

Later, both the EPA and the Indiana Department of Environmental Management requested the owner of Four County to participate in a program to monitor and close the landfill. The EPA thereafter notified Tippins that it was a potentially responsible party for environmental contamination at Four County. Tippins then made written demands upon Petroclean and USX, advising them of their potential liability under CERCLA for remedial investigation and response costs incurred by Tippins arising from the monitoring and closing of the landfill. Petroclean and USX denied CERCLA liability.

In August 1992, Tippins filed an action in the District Court for the Western District of Pennsylvania against Petroclean and USX pursuant to CERCLA §§ 107(a) and 113(f), 42 U.S.C.A. §§ 9607(a), 9613(f), and the Declaratory Judgment Act, 28 U.S.C.A. § 2201 (1994), seeking indemnity and contribution for past response costs and a declaratory judgment apportioning future response costs arising from the remedial action at Four County. Tippins alleged

---

[3]. Petroclean subcontracted with another transporter, Dart Trucking Company, Inc., to transport at least a portion of the dust to Four County. This contractual arrangement might have rendered Petroclean liable as an arranger under § 107(a)(3). See, e.g., New York v. SCA Servs., Inc., 844 F. Supp. 926, 928-29 (S.D.N.Y. 1994). The issue of Petroclean's liability as an arranger under § 107(a)(3) is not before us, however, because Tippins moved for summary judgment under § 107(a)(4) and the district court found Petroclean liable as a transporter.

that USX had arranged by contract for the disposal of the EAF dust and was liable as an arranger under § 107(a)(3) of CERCLA. Tippins also alleged that Petroclean was liable as a transporter under § 107(a)(4).

On cross-motions for summary judgment by Tippins and USX, the district court granted Tippins' motion, but denied that of USX. The court determined that USX was liable as an arranger under § 107(a)(3), rejecting USX's claim that the purchase agreement with respect to the EAF dust was for the sale of a useful commodity in contrast to a contract arranging for the disposal of a hazardous substance. The court also declined to find that Tippins was contractually bound to assume all potential CERCLA liability arising from the disposal of the dust by virtue of an indemnification clause in the purchase agreement. As for Petroclean, the court summarily concluded that it was liable as a transporter under § 107(a)(4). In a footnote, the court stated that, "[d]espite defendant Petroclean's attempt to characterize itself as merely the transporter who did not select the site . . ., it is a responsible party under CERCLA, as one who caused or contributed to a release or threatened release of hazardous waste." Mem. Op. at 11 n.5 (May 25, 1993) (quotations and citations omitted). The district court subsequently entered an order on October 19, 1993 allocating among the parties the past and future response costs associated with the remedial action at Four County, 50 percent to USX and 25 percent each to Tippins and Petroclean.

Every party filed a timely notice of appeal raising the same issues that were before the district court.  The district court exercised subject matter jurisdiction pursuant to 28 U.S.C.A. § 1331 (1993), as the cause of action arose under CERCLA.  We have appellate jurisdiction pursuant to 28 U.S.C.A. § 1291 (1993).  Our scope of review of summary judgment rulings is plenary.  Black v. Indiana Area Sch. Dist., 985 F.2d 707, 709 (3d Cir. 1993).  Summary judgment should be granted under Rule 56 of the Federal Rules of Civil Procedure only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  FED. R. CIV. P. 56(c); see Celotex Corp. v. Catrett, 477 U.S. 317, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986).  As noted above, we think the other grounds for appeal lack merit, but will discuss the scope of transporter liability under § 107(a)(4).[4]

---

[4].    We do note that our rejection of the indemnity claim is informed by our decision in Beazer East, Inc. v. Mead Corp., No. 93-3372, 1994 WL _____ (3d Cir. Aug. ??, 1994), filed this day.  In Beazer East, we hold that the question whether an indemnification clause shifts CERCLA liability is one of state law.  See id., 1994 WL _____, at *__.  Under any conflicts of law analysis the governing law here is that of Pennsylvania, as the question is one of the interpretation of a purchase agreement for real property located in Pennsylvania, the purchase agreement was entered into in Pennsylvania, and two of the three parties are residents of Pennsylvania.  See, e.g., REST.2D CONFLICT OF LAWS §§ 222, 224(2) (1971).
        Under Pennsylvania law, while a party may contract for indemnification for its own torts, "the language in the indemnity provision must be clear and unequivocal, and the burden of proof falls on the party seeking such relief; the burden is even greater where such party drafted the agreement."  DiPietro v. City of Philadelphia, 496 A.2d 407, 410 (Pa. Super. 1985).  Here neither the hold harmless clause contained in USX's sales agreement, nor the other provisions spread through various documents that USX points

## II. Discussion

Congress enacted CERCLA to facilitate the cleanup of potentially dangerous hazardous waste sites, with a view to the preservation of the environment and human health. CERCLA, a strict liability statute, has its "bite" in holding responsible parties financially accountable for the costs associated with a remedial or removal action at hazardous waste facilities. See United States v. Alcan Aluminum Corp., 964 F.2d 252, 258-59 (3d Cir. 1992). Section 107(a)(4)(B) provides that a responsible party, as defined in subsections 107(a)(1)-(4), shall be liable for "any other necessary costs of response incurred by any other person consistent with the national contingency plan." Section 113(f)(1), as amended by the Superfund Amendments and Reauthorization Act of 1986 ("SARA"), Pub. L. No. 99-499, 100 Stat. 1613 (Oct. 17, 1986), provides for an express right of contribution "from any other person who is liable or potentially liable" under § 107(a). To succeed under either section, a plaintiff must establish that the defendant is a responsible party. See Lansford-Coaldale Water Auth. v. Tonolli Corp., 4 F.3d 1209, 1219 (3d Cir. 1993). One basis for establishing a party's responsibility is transporter liability.

(..continued)
to, clearly and unequivocally encompass liability for USX's pre-transfer torts, under CERCLA or otherwise.

Petroclean contends that the district court erred when it concluded that Petroclean was liable as a transporter under § 107(a)(4),[5] which provides that

§§any person who accepts or accepted any hazardous substances for transport to disposal or treatment facilities, incineration vessels or sites selected by such person, from which there is a release, or a threatened release which causes the incurrence of response costs, of a hazardous substance, shall be liable . . . .

Specifically, Petroclean asserts that it cannot be liable unless the court finds that Petroclean made the ultimate selection of Four County as the disposal location. Petroclean further submits that the record is "vague at best" regarding its role in site selection, and thus that a genuine issue of material fact exists as to this issue.

In response, Tippins argues that § 107(a)(4) does not mandate that a transporter make the ultimate decision to select the disposal facility. Tippins claims that the phrase "selected by such person" found in § 107(a)(4) only modifies the term "sites," but not "facilities." Since Four County is a "facility,"[6] under Tippins' construction, Petroclean need not have participated in the selection of Four County as the disposal location at all for CERCLA liability to attach; its act of transportation would, standing alone,

_____

[5]. CERCLA states that "[t]he terms `transport' or `transportation' means the movement of a hazardous substance by any mode . . . ." 42 U.S.C.A. § 9601(26).

[6]. The parties agree that Four County is a "facility" as that term is defined in § 101(9).

suffice.[7]   Tippins alternatively contends that, even if liability attaches only to transporters who "select" a facility, the record demonstrates that, as a matter of fact, Petroclean did select the Four County facility.

---

[7].     This is apparently a controversy of first impression in the courts of appeals.   The Ninth Circuit has declared that a plaintiff states a claim under § 107(a) for recovery of response costs against a transporter where the complaint contains allegations that the property subject to the cleanup is a "facility" and that the defendant-transporter "`selected' the property for disposal." Ascon Properties, Inc. v. Mobil Oil Co., 866 F.2d 1149, 1153 (1989). Since the parties did not dispute that issue, however, the court provided no reasoning for its construction of § 107(a)(4).

A. Application of the Phrase "Selected by Such Person"

It is axiomatic that the starting point for interpreting a statute is the language of the statute itself. See Consumer Prod. Safety Comm'n v. GTE Sylvania, Inc., 447 U.S. 102, 108, 100 S. Ct. 2051, 2056, 64 L. Ed. 2d 766 (1980). Thus, to determine whether the phrase "selected by such person" just modifies "sites," or also applies to "facilities," we turn to the language of § 107(a)(4), quoted supra at **Error! Bookmark not defined.**. Under any parsing of the statute, a person who transports a hazardous substance to a "site" is liable under § 107(a)(4) only if it selected that disposal location. But there abides within an ambiguity as to whether selection is a necessary prerequisite to transporter liability where the hazardous waste is deposited at a "facility." Namely, in view of the absence of a comma after "sites," the phrase "selected by such person" can be interpreted to modify only "sites," as opposed to also modifying "facilities" and "incineration vessels." The fact that two divergent interpretations of § 107(a)(4) are plausible underscores the oft repeated notion that "CERCLA is not a paradigm of clarity or precision," Artesian Water Co. v. Government of New Castle County, 851 F.2d 643, 648 (3d Cir. 1988), but "is riddled with inconsistencies and redundancies," Alcan Aluminum, 964 F.2d at 258 n.5 (citation omitted).

A general canon of statutory construction holds that, absent a clear intention to the contrary, a modifier's reference is to the closest noun. See NORMAN J. SINGER, SUTHERLAND STATUTORY CONSTRUCTION § 47.33 (4th ed. 1985) (stating that "referential and qualifying

words and phrases, where no contrary intention appears, refer solely to the last antecedent"). Because of the inartful crafting of CERCLA in general, however, reliance solely upon general canons of statutory construction must be more tempered than usual; such canons are more appropriately applied to divine intent from statutes carefully worded and assiduously compiled than from the imprecise statutory language such as that found in § 107(a)(4). We believe that, notwithstanding the canon, the phrase "selected by such person" can, as the statute is grammatically constructed, also be construed to refer to "facilities" and "incineration vessels." A number of district courts have adopted such a construction, along with several commentators. See United States v. Petersen Sand & Gravel, Inc., 806 F. Supp. 1346, 1356 (N.D. Ill. 1992); Alcatel Info. Sys. v. Arizona, 778 F. Supp. 1092, 1095–96 (D. Ariz. 1991); United States v. Western Processing Co., Inc., 756 F. Supp. 1416, 1419–20 (W.D. Wash. 1991); United States v. Hardage, 750 F. Supp. 1444, 1458 (W.D. Okl. 1990); United States v. South Carolina Recycling & Disposal, Inc., 653 F. Supp. 984, 1005 (D.S.C. 1984), judgment modified on other grounds sub nom. United States v. Monsanto Co., 858 F.2d 160 (4th Cir. 1988), cert. denied, 490 U.S. 1106, 109 S. Ct. 3156, 104 L. Ed. 2d 1019 (1989); SUSAN M. COOKE, THE LAW OF HAZARDOUS WASTE § 14.01[4][e], at 14–139 (1987); 4 WILLIAM H. RODGERS, JR., ENVIRONMENTAL LAW: HAZARDOUS WASTES AND SUBSTANCES § 8.12[D], at 680–82 (1992); DONALD W. STEVER, LAW OF CHEMICAL REGULATION & HAZARDOUS WASTE § 607[2][f][iii], at 6–164 (1989); cf. Joslyn Mfg. Co. v. T.L. James & Co., 836 F. Supp. 1264, 1272–73 (W.D. La. 1993) (informing

construction of an analogous provision under the Louisiana Environ-mental Quality Act by reference to Western Processing).

The distinction Tippins advances would be illusory at best and nonsensical at worst, as CERCLA broadly defines "facility" to include any "site" containing a hazardous substance. See 42 U.S.C.A. § 9601(9).[8] Thus, Tippins' reading would lead to a curious result. On the one hand, a transporter would be liable if it transported the waste to a virgin site (one containing no hazardous substances) only if it selected that site. On the other hand, a transporter would be liable if it transported the waste to a site containing hazardous substances (thereby a "facility") whether or not it selected that location. The oddness of this result is aggravated by the fact that the very first shipment to a virgin site would deflower it, and the transporter would be liable for any subsequent shipments even if it had not selected that site. Tippins has advanced no reason why Congress might have intended such a peculiar result. As we read CERCLA, the terms site and facility substantially overlap -- they may even be equivalent, an issue we

---

[8]. CERCLA defines "facility" as:

> (A) any building, structure, installation, equipment, pipe or pipeline (including any pipe into a sewer or publicly owned treatment works), well, pit, pond, lagoon, impound-ment, ditch, landfill, storage container, motor vehicle, rolling stock, or aircraft, or (B) any site or area where a hazardous substance has been deposited, stored, disposed of, or placed, or otherwise come to be located; but does not include any consumer product in consumer use or any vessel.

42 U.S.C.A. § 9601(9).

need not decide -- and therefore "there can be little sense in holding the transporter liable for deliveries made to facilities designated by others, but holding him liable for deliveries to `sites' only if the transporter chose the site."  Western Processing, 756 F. Supp. at 1420.

We conclude then that a transporter must select the disposal facility to be held liable under § 107(a)(4).  This conclusion is based on our finding that the subordinate clause "selected by such person" modifies the referents "facilities" and "incineration vessels" along with the referent "sites."  We must now consider what acts by a transporter constitute selection of the disposal facility.

## B.  The Meaning of "Selection"

Since a transporter must select the disposal location to be liable under § 107(a)(4), we must determine whether Petroclean selected Four County as the disposal facility.  Tippins argues that Petroclean selected the site because it was actively involved in the selection process.  Not surprisingly, Petroclean counters this contention and would construe § 107(a)(4) narrowly to hold a transporter liable only when it made the final decision to select the disposal facility.  CERCLA does not unequivocally resolve the question of what particular acts by a transporter constitute selection, as it does not define the term "select."  Nor did the drafters of CERCLA or SARA provide any explanation for the site selection language.

Apparently no court of appeals has yet considered this issue, but at least one district court has. In United States v. Hardage, 750 F. Supp. 1444 (W.D. Okla. 1990), the United States claimed that United States Pollution Control, Inc. ("USPCI") was liable as a transporter under § 107(a)(4). In support of its argument, the government asserted that liability attaches when a transporter actively participates or assists in the site selection. USPCI urged the court to reject the government's argument and to hold that a transporter can be liable only if it acted alone in selecting the disposal site. The district court declined the invitation to "define the outer limits of transporter liability." Id. at 1459. The court, instead, held that under the circumstances presented in that case, the government had clearly met its burden of proof under § 107(a):

> Here, USPCI[] contracted with Mr. Hardage to use the Hardage Site for hazardous waste disposal prior to approaching any of the customers in question; proposed the Hardage Site to its customers as a location for hazardous waste disposal; determined whether certain customers' waste would be sent to injection wells as opposed to the Hardage Site; sent hazardous waste to the Hardage Site without the knowledge of, or instructions from, certain customers; and represented itself to at least one customer as the owner/operator of the Hardage Site. Finally, members of USPCI's senior management admitted under oath that USPCI did indeed select the Hardage Site for disposal of hazardous wastes on certain occasions.

Id.

The facts in Hardage are stronger for imposition of liability than those at bar. This distinction turns out to be one without a difference, though, for we believe that a person is liable as a transporter not only if it ultimately selects the disposal

facility, but also when it actively participates in the disposal decision to the extent of having had substantial input into which facility was ultimately chosen.[9] The substantiality of the input will be a function, in part, of whether the decisionmaker relied upon the transporter's special expertise in reaching its final decision. In other words, the selection process is a continuum and, in the circumstances we have described, the selection is done jointly.

Construing the term "selected" to encompass those persons whose participation in the selection process is as described takes no liberties with the statute. In Justice Holmes' oft quoted words, "[a] word is not a crystal, transparent and unchanged, it is the skin of a living thought and may vary greatly in color and content according to the circumstances and the time in which it is used." Towne v. Eisner, 245 U.S. 418, 425, 38 S. Ct. 158, 159, 62 L. Ed. 2d 372 (1918). In a case such as this, where the statute does not define the term at issue and the legislative history is unavailing, we must define the term "selected" in light of its ordinary use and the overall policies and objectives of CERCLA.

First, we note that our construction of "selected" is within the term's ordinary meaning. To "select" is "to choose from

_____

    [9]. Two district courts appear to have adopted this standard. See Western Processing, 756 F. Supp. at 1420 ("As one who actively selected a disposal site, the transporter may more equitably be subject to liability."); South Carolina Recycling, 653 F. Supp. at 1006 (holding a company liable as a transporter under § 107(a)(4) where it "participated in the selection of [the facility]."). Neither court provided any rationale for its construction.

a number or group usu[ally] by fitness, excellence, or other distinguishing feature." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 2058 (Philip B. Gove ed. 1966). When a transporter with a knowledge and understanding of the industry superior to its customer's investigates a number of potential disposal sites and suggests several to the customer from which it may pick, and the customer relies upon the transporter's knowledge and experience by choosing one of the winnowed sites, the transporter has performed a selection. Although the transporter has not made the ultimate decision, it has made the penultimate one; for all intents and purposes, the transporter has selected the facility by presenting it as one of a few disposal alternatives. In such cases of cooperation, the customer and transporter have jointly selected an appropriate disposal facility.

The "active participation" standard advances the objectives of CERCLA by recognizing the reality that transporters often play an influential role in the decision to dispose waste at a given facility. Generators undoubtedly regularly rely upon a transporter's expertise in hazardous waste management when considering disposal alternatives. A sophisticated transporter specializing in the transportion of hazardous material is accordingly frequently in the best position to ensure safe and proper disposal of the waste. There is no sound reason for such parties to escape CERCLA liability while the generators, owners, and operators are held liable, when they essentially determined the disposal location subjected to the remedial actions and incurring

the response costs.  This approach also comports with the need to interpret a remedial statute such as CERCLA liberally.  See Alcan Aluminum, 964 F.2d at 258.

We emphasize that for liability to attach, a transporter must be so involved in the selection process that it has substantial input into the disposal decision.  A transporter clearly does not select the disposal site merely by following the directions of the party with which it contracts.  See supra Part II.A.  In such cases, the transporter is no more than a conduit of the waste and its "connection with the material is the most attenuated among potentially responsible parties."  Western Processing, 756 F. Supp. at 1420.  Congress intended such transporters to avoid liability.  To be held liable under § 107(a)(4), the transporter must be so engaged in the selection process that holding it liable furthers one of CERCLA's central objectives:  to hold all persons actively involved in the storage or disposal of hazardous waste financially accountable for the cost of remedying resulting harm to the human health or environment.

C. <u>Petroclean's Putative Selection of the Four County Landfill</u>

Applying this standard to the instant case, we conclude that the district court appropriately granted summary judgment against Petroclean since there is no genuine issue of material fact as to Petroclean's active participation in the decision to dispose of the EAF dust at Four County. Petroclean admits that it did more than merely pick up the dust and transport it to the landfill. As a company specializing in site remediation and hazardous waste and transportation services, Petroclean had substantial input into the selection process, and Tippins clearly relied on its special expertise in ultimately choosing Four County.

Petroclean first identified the CECOS facility as the disposal site for the EAF dust, and subsequently contracted with Tippins to dispose of the waste there. Later, after discussions with CECOS about disposal costs, Petroclean learned that CECOS accepted waste only if packaged in special disposal bags which Petroclean considered "prohibitively" expensive. Petroclean thereafter surveyed alternative landfills, and completed applications for two possible disposal locations, Wayne Disposal and Four County. After receiving estimated disposal costs for the EAF dust from those sites, Petroclean forwarded the financial information to Tippins, which relied upon it to make its final selection of Four County as the disposal facility.[10]

---

[10]. Tippins also relied on Petroclean to complete the necessary forms for Tippins to receive an EPA waste identification number, to contact the State of Indiana and EPA Region 5 concerning Four County, and to inquire whether the landfill had insurance protection.

Although Petroclean did not make the _final_ decision to dispose of the dust at Four County, it substantially contributed to and shared in that decision by locating and submitting a limited number of potential disposal sites from which Tippins could select. Moreover, it is evident from the record that Tippins at all times relied upon Petroclean's expertise in the field of hazardous waste management when deciding the appropriate means and location to dispose of the EAF dust. On these facts, Petroclean was far more than a mere conduit of the hazardous waste; rather, it actively participated in the site selection decision, such that Petroclean and Tippins, working together, selected Four County as the disposal site. Consequently, Petroclean is liable under CERCLA § 107(a)(4) as a transporter which selected the disposal facility.

The judgment of the district court will be affirmed.